**STATE of Tennessee, Appellee,**

v.

**Shade Thomas UNDERWOOD, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 10, 1984.

Petition to Rehear Denied by Court of Criminal Appeals Jan. 23, 1984.

Permission to Appeal Denied by the Supreme Court April 2, 1984.

Robert T. Beaty, Oneida, for appellant.

William M. Leech, Jr., State Atty. Gen. & Reporter, Steven A. Hart, Asst. State Atty. Gen., Nashville, William Paul Phillips, Dist. Atty. Gen., Clifton H. Sexton, Asst. Dist. Atty. Gen., Huntsville, for appellee.

## OPINION

BYERS, Judge.

The defendant was convicted of second degree murder and sentenced to serve ninety-nine years in the penitentiary.

The defendant says the evidence is not sufficient to support the verdict, says the trial court should have suppressed the testimony of two witnesses whose names were not revealed until shortly before the trial, or in the alternative should have granted a continuance on this basis; says oral and written statements made by the defendant should have been suppressed; says the trial court erroneously allowed the state to demonstrate to the jury how the defendant had reenacted the crime at the scene thereof; says the trial judge erroneously allowed evidence of a prior crime committed by the defendant and erroneously instructed the jury on how to view this evidence; and says the trial court erroneously accepted the jury verdict after the jury returned an improper verdict and after they were instructed again on how to return their verdict.

The judgment is affirmed.

The state's evidence shows that at approximately 12:00 midnight on February 19, 1981, the defendant came to a trailer where the victim was sleeping. The defendant and the victim, who had been the chief witness to a previous crime to which the defendant had pled guilty, conversed for a time, and then left together to get alcoholic beverages. Throughout the early morning hours of February 20, 1981, the defendant was seen, driving a station wagon, by various people, including a witness who saw the defendant at 2:00 a.m., a witness who saw the defendant at 2:30 a.m. and a witness who saw the defendant at 2:45 a.m. The state's evidence does not show the whereabouts of the defendant between the hours of 2:45 a.m. and approximately 5:00 a.m. on February 20, 1981. A state witness testified he saw the defendant at a store at approximately 5:00 a.m. on that morning. The defendant told this witness that he had gotten lost while hunting in the mountains during the night and that he had called his father to pick him up. Shortly after this, a truck arrived and the defendant was driven away. A state witness, who arrived at the store a brief time later, had passed a burning station wagon.

The sheriff's department received a report about the burning vehicle at 6:58 a.m. Police officers investigated the report and found the vehicle and a corpse therein. Through autopsy and other means, the corpse was identified as the deceased in this case. Death had resulted from wounds inflicted by a shotgun. A lighter fluid can was found in the car, and a state fire marshal testified the vehicle was intentionally burned.

The records at the sheriff's department showed the defendant called the department at 10:08 a.m. on February 20, 1981, to report that his vehicle had been stolen the previous evening. The records at the sheriff's office did not show any earlier report of the vehicle being stolen.

The defendant subsequently made a statement in which he admitted shooting the deceased but said it was done to defend himself from an attack made upon him by the deceased.

The defendant did not testify but offered the testimony of his mother and father to establish a defense of alibi. These witnesses testified the defendant arrived at his home at approximately 1:30 a.m. on February 20, 1981, after he had called to tell them his car had been stolen, and the defendant's father had gone to get him. Both of these witnesses testified the defendant called the sheriff's office at that time to report the theft of his automobile.

The state's evidence shows the defendant and the deceased were together prior to the discovery of the vehicle, the defendant had a motive to kill the de-

ceased, and the defendant was in the vicinity of the burning vehicle when it was found. Furthermore, the defendant attempted to cover up the crime and his participation therein, and he confessed to the crime. The defendant's defense of alibi presented a factual issue for the jury to determine. *State v. Crawford*, 635 S.W.2d 704 (Tenn.Cr.App.1982). We are satisfied that there was more than sufficient evidence upon which the jury could reject the defense and to find the defendant guilty beyond a reasonable doubt. T.R.A.P. 13(e); *State v. Patton*, 593 S.W.2d 913 (Tenn. 1979).

The state, on November 27, 1981, notified defense counsel that they would call the witness who discovered the burning car and the witness who had seen the defendant in the vicinity thereof on the morning of February 20, 1981. Although an officer apparently had known of these witnesses for a considerable length of time, for various reasons, the district attorney general had not. There was no showing of bad faith on the part of the state in not listing these witnesses on the indictment or giving earlier notice of them to the defendant. Defendant's counsel talked to these witnesses on November 28, and they discussed what they knew about the case with the attorney. The trial of this case commenced on November 30, 1981. During a hearing before the trial judge defense counsel insisted he had not had adequate time to investigate these witnesses to prepare to impeach their credibility or to refute their evidence.

T.C.A. § 40–17–106, which provides that the state shall list upon the indictment the names of witnesses to be called by the state, is directory only. The failure to list witnesses does not alone disqualify them from testifying, and the defendant is not entitled to relief without a showing that prejudice resulted from the omission. *State v. Goodman*, 643 S.W.2d 375 (Tenn.Cr.App.1982); *State v. Kenner*, 640 S.W.2d 51 (Tenn.Cr.App.1982). Whether to allow the witnesses to testify is a matter of discretion for the trial judge, and

is to be exercised upon the circumstances in the particular case. *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173 (1963). Defense counsel interviewed these witnesses two days prior to trial. Under these circumstances we do not think the trial judge abused his discretion in denying the defendant's motion to disqualify the witnesses.

Further, there is no showing in post-trial proceedings that had the defendant had more time he could have impeached or refuted the testimony of the witnesses. We conclude therefore that the trial court did not err in allowing these witnesses to testify or in denying the defendant's motion to continue the case to permit an investigation of these witnesses.

The defendant contends the written statements he made to officers should not have been admitted because they were obtained in violation of his right not to give evidence against himself. The basic thrust of the defendant's claim that his right not to incriminate himself was violated flowed from an initial interview with the sheriff when no *Miranda* warnings were given and which he says resulted in later statements by the defendant.

On the morning the defendant's vehicle was found burning, the sheriff was driving to the scene to investigate. While en route, the sheriff was informed over the radio that the defendant had just called and reported the vehicle was stolen the prior evening. The sheriff went to the defendant's home to take a statement from the defendant concerning the theft of the automobile. The sheriff did not inform the defendant the vehicle and the body had been found, nor did the sheriff give the defendant the advice mandated by *Miranda*, prior to the interview. The trial judge found that in subsequent interviews the defendant was given the advice mandated by *Miranda*, and that the defendant understood his right and voluntarily waived his right not to make statements. The evidence supports this finding.

We are of the opinion the defendant's rights were not violated by the origi-

nal, uncounseled interview. The defendant himself initiated the contact with the sheriff's office concerning the theft of his automobile. The defendant was not in custody at the time of the interview, the investigation had not progressed to the point where the defendant was a prime suspect in the murder, nor had the situation reached the accusatorial stage. Under these circumstances, we see no violation of the defendant's rights. The fact that the sheriff suspected the defendant might be implicated in the killing is not sufficient to hold the defendant's rights were violated by the sheriff's conduct. *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *Childs v. State*, 584 S.W.2d 783 (Tenn.1979). Because the original interview was not improperly conducted, and because the subsequent statements were voluntarily and knowingly made after a voluntary and knowing waiver of the right not to make a statement, we find the written statements by the defendant were properly admitted.

■ The defendant contends further that oral statements to which the officers testified during the course of a demonstration of the defendant's reenactment of the crime were inadmissible because they had not been summarized and provided to defense counsel upon his demand for discovery, Tenn.R.Crim.P. 16(a)(1)(A). The trial judge found that the defendant had opportunity to know of these statements because of the preliminary hearing and that these statements placed no undue burden upon the defendant. We agree with the trial judge and hold these statements were properly admitted. *See State v. Garland*, 617 S.W.2d 176 (Tenn.Cr.App.1981).

During the course of the trial, the sheriff and an officer reenacted before the jury the defendant's demonstration to them of how he committed the crime. The defendant contends this was erroneous because it was prone to error, mistake, and inaccuracy.

■ There appears to be no authority either condemning this type evidence or supporting it. However, we see no reason why this evidence is not admissible within the discretion and control of the trial judge. This evidence is in the nature of declaration against interest, and when the record shows the defendant has voluntarily and knowingly entered into the reenactment, we see no impediment to allowing such evidence when the defendant, as here, has the opportunity to cross-examine the witnesses who conduct the demonstration and otherwise test the validity and credibility of the evidence.

In the trial of this case, the state was allowed to show that the defendant had been charged with shooting into an occupied place of business and that he pled guilty to the offense. The victim had appeared at the hearing on these charges as a witness for the state. He had not testified, but his expected testimony was stipulated in the proceeding. The evidence showed the defendant was guilty of the offense. On the evening prior to the death of the deceased, a witness testified, the defendant asked the deceased what he would have testified to at the previous hearing if called. The deceased reportedly said he would have told the truth. The trial judge instructed the jury that they could not consider this evidence as showing the defendant had a predisposition to commit crimes of violence so as to find the defendant guilty of the charge on trial.

■ The state may show a motive for the accused to commit a crime, and this may be shown by evidence that the defendant has committed a previous crime, if the evidence of the previous crime shows a motive for the defendant to have committed the offense on which he is being tried, *State v. Turnbill*, 640 S.W.2d 40 (Tenn.Cr.App.1982); *Williams v. State*, 520 S.W.2d 371 (Tenn.Cr.App.1974), provided its relevance is not outweighed by its prejudicial effect.

■ In this case, we find this evidence was admissible. The fact that the victim had stipulated testimony showing the defendant guilty of the previous offense would show the motive for the defendant to

kill the deceased. We do not think its prejudicial effect outweighed the relevance of the evidence, and the instruction given by the trial judge as to the reception of this evidence was proper.

When the jury first returned a verdict of second degree murder in this case, they reported they had fixed the punishment at "imprisonment in the state penitentiary for life, not less than ten years." The trial judge would not accept this verdict and gave supplemental instructions to the jury concerning their verdict. The jury then deliberated further and announced they fixed the punishment at ninety-nine years.

The punishment for second degree murder is a determinate sentence. Because the verdict returned by the jury in their initial report was improper, it was incumbent upon the trial judge to reject this and instruct the jury further on the matter of punishment. *Jones v. State*, 569 S.W.2d 462 (Tenn.1978). The subsequent jury-reported verdict was proper, and the court properly accepted the verdict. *See Gwinn v. State*, 595 S.W.2d 832 (Tenn.Cr. App.1979).

DUNCAN and DAUGHTREY, JJ., concur.