Shade T. UNDERWOOD, Jr., Appellant,

v.

Gary LIVESAY, Warden, and State of Tennessee, Appellees.

Court of Criminal Appeals of Tennessee, at Knoxville.

Aug. 12, 1986.

Permission to Appeal Denied by Supreme Court Nov. 3, 1986.

Michael O. Ripley, Smith & Ripley, Huntsville, for appellant.

W.J. Michael Cody, Atty. Gen., Kathy M. Principe, Asst. Atty. Gen., Nashville, William Paul Phillips, Dist. Atty. Gen., Huntsville, Michael Pemberton, Asst. Dist. Atty. Gen., Wartburg, for appellees.

## OPINION

SCOTT, Judge.

The appellant was convicted of murder in the second degree and received a sentence of ninety-nine years in the state penitentiary. On appeal to this Court he raised numerous issues. All were found to be without merit and the judgment was affirmed. *State v. Underwood,* 669 S.W.2d 700 (Tenn. Cr.App.1984). A petition to rehear was denied by this Court and his application for permission to appeal was denied by the Tennessee Supreme Court. *State of Tennessee v. Shade Thomas Underwood, Jr.,* Tennessee Supreme Court, Order filed at Knoxville, April 2, 1984.

Just over a month after the Supreme Court denied relief, the appellant filed his petition for post-conviction relief, complaining that he received ineffective assistance of counsel. After a full evidentiary hearing the trial judge denied relief and dismissed the petition. From that denial, the appellant has appealed presenting two issues. First, he contends that the trial judge erred in finding he received effective assistance of counsel.

In his brief the appellant challenged the effectiveness of his counsel in three particulars. First, he contends that his counsel

was ineffective by failing to "investigate, research and move to suppress" the shotgun which was seized pursuant to a search warrant. Next, he contends that his counsel was ineffective because he failed to properly "investigate, research and present evidence" to support his motion to suppress his confession. Finally, he contends that his counsel's attitude toward him was such that he did not "adequately, zealously and effectively" represent him. There is no merit to any of these contentions.

Pursuant to a search warrant law enforcement officers searched his father's mobile home. A .12 gauge shotgun was seized and was introduced for identification at the trial but was never admitted into evidence. The shotgun was utilized for a trial demonstration, which this Court approved. 669 S.W.2d at 704.

The alleged defect in the search warrant, which counsel did not raise, was the description of the property. Attached to the search warrant as an exhibit was a metes and bounds description of a 153 acre tract located in the Fifth Civil District of Morgan County, Tennessee, on the Deer Lodge-Sunbright Road about four miles west of Sunbright, Tennessee. The appellant's mother testified that the correct description of their property was set forth in a description of two tracts totaling 204⅝ acres, which she offered as an exhibit at the post-conviction hearing.

However, as the state points out, apart from the metes and bounds description, the description in the search warrant was adequate. In the body of the warrant, the premises were described as:

Being in the 5th Civil District of Morgan County, Tennessee off the Sunbright-Deer Lodge Road, approximately 150 ft. off this road, and approximately 100 yds. past C.V. Jones' Texaco Station, traveling towards Deer Lodge, but on the opposite side of the road from the Texaco Station; known as the Shade Underwood property, consisting of a mobile home and all outbuildings and vehicles located on the property;

Robert T. Beaty of Oneida, who represented the appellant at trial and on direct appeal to this Court and the Supreme Court, testified that in his conversations with the appellant's father he was convinced that the description in the search warrant was sufficient, since, in his opinion, the property could be located with the warrant.

 As counsel noted, the test for the sufficiency of the description in a search warrant is whether it enables the officer to locate the place to be searched with reasonable certainty. *Garrett v. State*, 194 Tenn. 124, 250 S.W.2d 43, 44 (1952). Even without the metes and bounds description the search warrant met the *Garrett* test and counsel cannot be faulted for having failed to seek suppression of an item seized pursuant to the warrant, which was not even introduced.

As to the failure to get the appellant's confession suppressed, Mr. Beaty testified that, in his conversations with the appellant, he learned that the appellant contended that he had been mistreated by Dennis Ledbetter, the Sheriff of Morgan County, and Ed Ashburn, a Tennessee Bureau of Investigation agent, who is now deceased. Mr. Beaty recounted how, at the hearing on the motion to suppress the confession, he attempted to develop this allegation by cross-examination of Messrs. Ledbetter and Ashburn. Unfortunately, he could find no independent corroboration that a beating had been administered, apart from some bruises of unknown origin on the appellant's leg. He was fearful of putting the appellant on the witness stand, even at the hearing on the motion to suppress, because he was afraid that information helpful to the prosecution would slip out during the appellant's examination.

The appellant testified at the post-conviction relief hearing that he told defense counsel that the officers obtained the confession by physically abusing him by slamming him against a wall, knocking his legs apart with a stick and pushing him to and fro. He testified that he showed his counsel his bruises but that counsel did not

pursue the matter. The appellant's parents, who were present at the hearing, had seen a bruise on the appellant's leg, but they were not called. Ira Sexton, a minister, had seen the bruises, but his testimony was not supportive of the appellant's theory.

The sheriff was called at the post-conviction relief hearing and testified that the appellant's counsel interviewed him and Mr. Ashburn prior to trial regarding the alleged beating. He candidly admitted that if they "roughed up" the appellant, neither he nor Mr. Ashburn would be prone to admit it. Amazingly, no one ever asked the sheriff if they "roughed up" the appellant to extract the confession.

In short, Mr. Beaty stated that he simply did not believe that he could convince the court that the appellant was beaten. His tactic in regard to the statement was to attempt to show that this statement was one of many "cock and bull" stories that the appellant had told the sheriff. The appellant made several statements or confessions to the sheriff at one time or the other, and it was the defense theory that none of them were true.

■ The appellant's defense counsel made a legitimate tactical decision as to how to deal with the confession. Having concluded that he could not convince the judge that the sheriff and the TBI agent had coerced the confession, he decided to downplay it by attempting to make it appear to be one of several "cock and bull" stories told to the sheriff by the appellant. There was no proof that this was not a proper tactic. The fact that another attorney may have approached the problem in a different manner does not mean that counsel's tactic was improper. Hindsight is always 20/20 and the fact that another attorney may have proceeded differently does not mean that counsel was ineffective. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

■ In his final complaint about his counsel, the appellant contends that Mr. Beaty's attitude toward him was such that he did not exert his best efforts to "adequately, zealously and effectively" represent him.

Specifically, the appellant complains about a letter dated March 11, 1981, which Mr. Beaty wrote to Shade Underwood, the appellant's father, with a copy to the appellant. In that letter Mr. Beaty acknowledged that he had been appointed to represent the appellant at the preliminary hearing to be held nine days later. He went on to advise Mr. Underwood to hire a lawyer to represent his son, since he was charged with murder in the first degree and was facing the electric chair. Counsel went on to quote a fee and expressed his willingness to accept Mr. Underwood's note and a deed of trust as security for the fee. He noted that he had represented both the elder Mr. Underwood and the appellant "over the years" for "dirt cheap fees," much of which he never collected. According to the letter, Mr. Beaty had heard that the elder Mr. Underwood had asked the General Sessions Judge to appoint him to represent his son. He resented Mr. Underwood having done that, but noted that he would do "what the law requires me to do in representing (the appellant) at the preliminary hearing, but no more than that." He then stated that he would oppose any effort to have him appointed in Criminal Court. He closed the letter by admonishing Mr. Underwood for having "stuck up for" the appellant "in everything he got into." He noted that the elder Mr. Underwood would not be able to "talk him out of this one," nor would counsel "let (the appellant) lie and con me this time."

At the post-conviction hearing Mr. Beaty candidly admitted that he tried to get out of the appointment, but that the General Sessions Judge refused to relieve him. Likewise, he sought not to be appointed in Criminal Court. However, Mr. Beaty had extensive experience in serious criminal cases and there were no attorneys in Morgan County who were, in the trial judge's opinion, competent to handle a first degree murder case. Thus, Mr. Beaty, from adjoining Scott County, was appointed to represent the appellant.

Furthermore, as the letter revealed, he had represented the appellant and his family in numerous matters in the past and he was a natural choice for appointment. The record absolutely and unequivocally shows beyond any doubt that Mr. Beaty was a forceful and effective advocate for his client in the trial court and on appeal to both this Court and the Supreme Court. The record clearly reveals that all of the services rendered and advice given by Mr. Beaty were "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975). This issue has no merit.

In another issue the appellant contends that the instructions given by the trial court concerning the element of malice were constitutionally insufficient and that his counsel was ineffective for failing to object to the allegedly deficient instructions.

Counsel candidly admits in his brief that this issue was not litigated at the hearing on the petition for post-conviction relief. However, citing *Mallicoat v. State*, 539 S.W.2d 54, 55 (Tenn.Cr.App.1976), he contends that this Court has the right, on its own motion, to notice errors of the lower court and correct them when they are plainly shown. Relying on *Miller v. State*, 584 S.W.2d 758, 760–761 (Tenn.1979), he also notes that constitutional issues may be raised for the first time on appeal. However, the appellant's counsel has failed to note the qualification found in *Mallicoat* and *Miller*, and quoted from *Manning v. State*, 500 S.W.2d 913, 914 (Tenn.1973), that only "in exceptional circumstances" do appellate courts notice errors to which no exception has been taken in the trial courts.

■ The crime, the appellant's trial and subsequent appeals occurred after the United States Supreme Court's decision in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the case upon which the appellant's complaint is based. He has advanced no reason why the issue was not raised at trial, on direct appeal or at the hearing on the post-conviction relief proceeding. Defense counsel was not questioned at all about this alleged deficiency in his representation. In short, this issue was waived. TCA § 40–30–112(b)(1) and (2).

■ . The reason the issue was never raised is obvious from the record. The issue does not exist. The trial judge did not instruct the jury concerning a burden-shifting "presumption" of malice, condemned in *Sandstrom*, 99 S.Ct. at 2459–2460, but noted that there "may" be an "inference" of malice from the fact that a deadly weapon was used in the commission of the crime. There is no issue for this Court to consider on appeal, just as there was nothing for the trial court to consider. This issue has no merit.

Finding no merit to either issue, the judgment is affirmed.

WALKER, P.J., concurs.

DWYER, J., did not participate in this decision.