IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 6, 2015 Session

## STATE OF TENNESSEE v. JAMES PENNOCK

**Appeal from the Circuit Court for Dyer County**
**No. 12-CR-328     R. Lee Moore, Jr., Judge**

———————

**No. W2013-02526-CCA-R3-CD  -  Filed March 19, 2015**

———————

The Defendant-Appellant, James Pennock, was convicted by a Dyer County jury of three counts of sale of a Schedule II controlled substance.  On appeal, the Defendant argues that (1) the evidence is insufficient to establish the Defendant's identity as the person who committed the offenses; (2) the trial court erred in instructing the jury regarding eyewitness identification testimony; and (3) the trial court erred in allowing the co-defendant, Nora Gibson, to testify without proper notice provided to the Defendant.[1] Upon our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, delivered the opinion of the court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

William T. Edwards, Dyersburg, Tennessee, for the Defendant-Appellant, James Pennock.

Robert E. Cooper, Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Phillip Bivens, District Attorney General; and Karen Burns, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**State's Proof.**  In December 2011, Sergeant Michael Leggett of the Dyersburg Police Department narcotics unit used a confidential informant, Paul "Sonny" Barch, to facilitate three undercover drug buys from the Defendant.  Sergeant Leggett testified that

_____

[1] We have renumbered the Defendant's issues for clarity.

he had worked with Barch as a confidential informant in approximately 170 cases, and Barch had proven reliable.

On December 13, 2011, Barch called the Defendant and asked if he had any methodone to sell. Barch had known the Defendant for eight to ten years and had sold drugs to him before. Sergeant Leggett monitored and recorded the phone call, which was introduced into evidence and played for the jury. The Defendant informed Barch that he had methadone to sell, and the two arranged to meet at a local Dollar General Store. Before the arranged meeting time, Investigator Chris Gorman of the Dyer County Sheriff's Office searched Barch and his vehicle to ensure that he did not have any drugs, money, or weapons in his possession. The officers provided Barch with recorded buy money to purchase the drugs and equipped him with audio and video recording devices to monitor and record the sale. The officers also followed Barch and videotaped the transaction from their vehicle a short distance away.[2] At the Dollar General Store, Barch was met by the Defendant's mother, Nora Gibson, rather than the Defendant. She delivered 15 methadone pills, and he gave her $80. After the transaction, Barch met the officers at their arranged meeting location and gave Sergeant Leggett the pills. Sergeant Leggett sealed the pills in an evidence bag, and Investigator Gorman searched Barch's person and vehicle again and did not find any other drugs.

On December 15 and December 22, 2011, Barch called the Defendant again to make two more undercover drug buys. On both occasions, Sergeant Leggett monitored and recorded the phone calls made to the Defendant. The Defendant and Barch arranged to meet at the Defendant's house for both sales. Prior to the meetings, Dyersburg Police Officer Chris Clement searched Barch and his vehicle and equipped him with audio and video recording devices. Sergeant Legget and Officer Clement monitored the sales from about a block away from the Defendant's home. On December 15, the Defendant sold Barch 15 methadone pills for $75, and on December 22, the Defendant sold Barch 15 methdadone pills for $120. After the transactions, Barch met the officers and gave Sergeant Leggett the methadone pills he purchased from the Defendant. Sergeant Leggett sealed the pills in an evidence bag, and Officer Clement searched Barch and his vehicle and did not find any other drugs or money.

Sergeant Leggett acknowledged that Barch had a prior criminal record and a history of drug abuse. He testified that Barch did not have any pending criminal charges when he worked as a confidential informant, and Barch was paid by the police department for his undercover work. Likewise, Barch testified that he had been convicted of selling drugs in the past and had used drugs for many years. He stated that he had been "clean" for over a year, and he decided to work as a confidential informant

---

[2] The phone call recordings and audio and video recordings of the drug sales were introduced into evidence and played for the jury, but the recordings are not included in the record on appeal.

because he "wanted to make changes in [himself]." He testified that he did not have any pending charges in December 2011 and all of his prior drug charges occurred before he began working as a confidential informant.

Special Agent Brock Sain, a forensic scientist for the Tennessee Bureau of Investigation, was qualified as an expert in drug identification. He analyzed the pills purchased from the Defendant in this case and determined the pills to be methadone, a Schedule II drug.

Nora Gibson, the Defendant's mother and the co-defendant in this case, testified on behalf of the State over the objection of the Defendant. In December 2011, the Defendant lived with her in her home. She testified that on December 13, 2011, the Defendant asked her to deliver methadone pills to Sonny Barch, and she did so. Barch gave her $80 for the pills, and she kept part of the money and gave the remainder to the Defendant. She acknowledged that in exchange for her testimony, the State agreed to dismiss the charges against her.

**Defense's Proof.** The Defendant testified that the methadone pills sold to Barch in December 2011 belonged to his mother, Nora Gibson, and that he acted only as a "middle man." He testified that his mother had a prescription for methadone and asked him to find buyers for some of the pills when they needed money. He recalled that Barch called him in December 2011 and asked him, "Do you have anything," which he understood as referring to methadone. He testified that he "never was involved" in the transaction that took place on December 13, 2011, and did not receive any money from that sale. He acknowledged that he sold methadone pills to Barch on December 15 and December 22 but claimed that Barch did not hand him any money for the pills on those dates.

On cross-examination, the Defendant agreed that he was "selling [his] mama's methadone" pills but claimed that she wanted him to sell them because "she needed the money." He acknowledged that in the audio recording of the phone call on December 13, 2011, he told Barch "[w]e'll meet you up [at the Dollar General Store]." He also acknowledged that in the other audio recordings of the phone calls on December 15 and December 22, he and Barch discussed the purchase price for the methadone. He testified that he increased the price from $75 to $120 in the third transaction because he found out "what the going price was" for methadone pills. He stated, "I was at five [dollars per pill], but . . . . the price really was seven or eight [dollars per pill]," so he raised the price "[j]ust like everyone else was doing." When asked whether he sold the pills to Barch on December 15 and December 22, the Defendant responded, "Yeah." He claimed, however, that he gave the money from the sales to his mother, and he did not receive any money from the sales.

-3-

Following deliberation, the jury convicted the Defendant of three counts of sale of a Schedule II substance as charged in the indictment. A sentencing hearing was held on September 19, 2013, after which the trial court sentenced the defendant to an effective sentence of 12 years' confinement with a 45% release eligibility.

## ANALYSIS

On appeal, the Defendant argues that (1) the evidence is insufficient to establish the Defendant's identity as the person who committed the offenses; (2) the trial court erred in instructing the jury regarding eyewitness identification testimony; and (3) the trial court erred in allowing co-defendant Nora Gibson to testify without proper notice provided to the Defendant. The State responds that the evidence is sufficient to establish the Defendant's identity, and the trial court properly instructed the jury on identification. Additionally, the State maintains that the trial court acted within its discretion in allowing the co-defendant to testify.

**I. Sufficiency of the Evidence.**[3] The Defendant contends that the State failed to prove his identity as the perpetrator of the crimes because none of the witnesses identified him as the perpetrator of the crimes in open court. He acknowledges that multiple witnesses testified that "James 'Pee Wee' Pennock" perpetrated the drug transactions and that the State introduced several video recordings that depict a person that "appears to be the [D]efendant." However, he argues that this evidence fails to establish his identity as the perpetrator because no witness identified the Defendant as "James 'Pee Wee' Pennock" or testified that the person in the videos was the Defendant.

It is well-established that when considering the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." "Because a verdict of guilt removes the presumption of innocence and raises a

---

[3] The Defendant challenged the sufficiency of the evidence establishing his identity as a sub-issue of his challenge to the trial court's jury instructions regarding identity. For clarity, we address these issues separately.

presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009).

"The identity of the perpetrator is an essential element of any crime." State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving the identity of the defendant as the perpetrator beyond a reasonable doubt. State v. Cribbs, 967 S.W.2d 773, 779 (Tenn. 1998). The identity of the defendant as the perpetrator may be established by direct evidence, circumstantial evidence, or a combination of the two. Thompson, 519 S.W.2d at 793. "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993)). The identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. State v. Thomas, 158 S.W.3d 361, 388 (Tenn. 2005) (citing State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993)).

Although no witnesses pointed out the Defendant in court as the perpetrator of the crimes, it is clear from the record that the witnesses were referring to the Defendant. Sergeant Leggett, Investigator Gorman, and Officer Clements all referred to the Defendant by name as the target of their investigation. Likewise, Barch referred to the Defendant by name and testified that he had known the Defendant for eight or ten years. See State v. Donald Davis, No. M2000-01503-CCA-R3-CD, 2001 WL 261547, at *2 (Tenn. Crim. App. Mar. 16, 2001) ("When a witness refers to a defendant by name, the defendant's identity can be reasonably determined or inferred by the jury." (citing State v. Phillips, 728 S.W.2d 21, 25 (Tenn. Crim. App. 1986))). Further, during cross-examination of Sergeant Leggett, defense counsel repeatedly asked Sergeant Leggett about the investigation against "[his] client." It is clear that counsel was referring to the Defendant, and no correction was made by Sergeant Leggett. In fact, Sergeant Leggett responded to one of counsel's questions by explaining that two of the drug transactions occurred at "your client's home." In addition, multiple video recordings of the drug transactions were introduced into evidence and shown to the jury. The jury was free to compare the videos to each other, to the Defendant, and to the witnesses' testimony. Based on this evidence, a rational juror could conclude beyond a reasonable doubt that the State identified the Defendant as the perpetrator of the crimes.

**II. Identity Jury Instructions.** The Defendant argues that the trial court erred by improperly instructing the jury on eyewitness identification testimony. Specifically, he asserts that the court should have given the eyewitness identity instruction announced in State v. Dyle, 899 S.W.2d 607 (Tenn. 1995) because the identity of the Defendant was a

material issue in the case as no witnesses identified him in court as the perpetrator of the crimes.

In Dyle, the Tennessee Supreme Court promulgated the following eyewitness identity instruction, which must be given in cases where identification is a material issue and the instruction is requested by defense counsel:

> One of the issues in this case is the identification of the defendant as the person who committed the crime. The state has the burden of proving identity beyond a reasonable doubt. Identification testimony is an expression of belief or impression by the witness, and its value may depend upon your consideration of several factors. Some of the factors which you may consider are:
>
> (1) The witness' capacity and opportunity to observe the offender. This includes, among other things, the length of time available for observation, the distance from which the witness observed, the lighting, and whether the person who committed the crime was a prior acquaintance of the witness;
>
> (2) The degree of certainty expressed by the witness regarding the identification and the circumstances under which it was made, including whether it is the product of the witness' own recollection;
>
> (3) The occasions, if any, on which the witness failed to made an identification of the defendant, or made an identification that was inconsistent with the identification at trial; and
>
> (4) The occasions, if any, on which the witness made an identification that was consistent with the identification at trial, and the circumstances surrounding such identifications.
>
> Again, the state has the burden of proving every element of the crime charged, and this burden specifically includes the identity of the defendant as the person who committed the crime for which he or she is on trial. If after considering the identification testimony in light of all the proof you have a reasonable doubt that the defendant is the person who committed the crime, you must find the defendant not guilty.

Id. at 612. The supreme court emphasized that this instruction is only required where identification is a material issue in the case, id., i.e., where the defendant puts it at issue or the eyewitness testimony is uncorroborated by circumstantial evidence. Id. n.4. If

-6-

identity is a material issue and the defendant does not request the instruction, the trial court's failure to give it will be reviewed for harmless error. Id. at 612. If identity is not a material issue, however, failure to give the instruction is not error at all. See State v. Holt, 965 S.W.2d 496, 499 n.1 (Tenn. Crim. App. 1997) ("[O]nly if identity is a material issue is a defendant entitled to the Dyle instruction upon request or a harmless error analysis in the absence of a special request. If identity is not a material issue failure to give the Dyle instruction is not error at all.").

In the instant case, the Defendant did not request the Dyle instruction at trial. Indeed, when the trial court informed counsel that it intended to give "the short ID charge," defense counsel responded, "I think [the Defendant] identified himself." The trial court then instructed the jury on identification as follows:

> [T]he identity of the defendant must be proven in this case on the part of the State to your satisfaction beyond a reasonable doubt. In other words, the burden of proof is on the State to show that the defendant now on trial before you is the identical person who committed the alleged crime in which he is charged. In considering the identity of a person the jury may take into consideration all the facts and circumstances of the case.

> The court further charges you that if you were satisfied from the whole proof in the case beyond a reasonable doubt that the defendant James "Pee Wee" Pennock committed the crimes charged against him and you were satisfied beyond a reasonable doubt that he has been identified as the person who committed the crimes charged then it will be your duty to convict him.

> On the other hand, if you are not satisfied with the identity from the proof or you have a reasonable doubt as to whether he has been identified from the whole body of proof in the case, then you should return a verdict of not guilty.

Notwithstanding the defendant's failure to request the instruction, the Defendant contends that the trial court erred in failing to give the Dyle instruction because his identity was a material issue as no witnesses identified him in open court as the perpetrator of the offenses. We disagree. As previously noted, identification is a material issue where the defendant puts it at issue or the eyewitness testimony is uncorroborated by circumstantial evidence. Dyle, 899 S.W.2d at 612, n.4. Here, the Defendant did not dispute his identity as the person involved in the transactions with Barch; rather, his theory of defense seemed to be that he did not exchange drugs for money during the meetings with Barch or that he was only acting as a "middle man"

-7-

between his co-defendant, Nora Gibson, and buyers. In fact, during his own testimony, the Defendant admitted that he sold drugs to Barch but claimed that he did not receive any money in exchange for the drugs. Thus, the Defendant's identity was not a material issue at trial, and the court's failure to give the Dyle instruction was not error.

**III. Admissibility of Nora Gibson's Testimony.** The Defendant contends that the trial court erred in permitting his co-defendant, Nora Gibson, to testify at trial over his objection because he had no notice that she would testify. He maintains that he was prejudiced as a result because he had no opportunity to prepare his defense in light of her testimony, which was "devastating to the [Defendant]'s position."

"The determination of whether to allow a witness to testify is left to the sound discretion of the trial judge." State v. Kendricks, 947 S.W.2d 875, 883 (Tenn. Crim. App. 1996) (citing State v. Underwood, 669 S.W.2d 700, 703 (Tenn. Crim. App. 1984)). Accordingly, we will "not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." State v. Franklin, 308 S.W.3d 799, 809 (Tenn. 2010) (citing State v. Lewis, 235 S.W.3d 136, 141 (Tenn. 2007)). A trial court does not abuse its discretion unless it applies "an incorrect legal standard or reaches an 'illogical decision that causes an injustice to the complaining party.'" Lewis, 235 S.W.3d at 141 (quoting State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006)).

Tennessee Code Annotated section 40-17-106 provides that the State must list "the names of such witnesses as [it] intends shall be summoned in the cause" on the charging indictment. "The purpose of this statute is to prevent surprise to the defendant and to permit the defendant to prepare his or her defense to the indictment." State v. Allen, 976 S.W.2d 661, 667 (Tenn. Crim. App. 1997). However, the statute is "directory only and does not necessarily disqualify a witness whose name does not appear on the indictment from testifying." State v. Harris, 839 S.W.2d 54, 69 (Tenn. 1992) (citing State v. Street, 768 S.W.2d 703, 710-11 (Tenn. Crim. App. 1988)). "A defendant will be entitled to relief for nondisclosure only if he or she can demonstrate prejudice, bad faith, or undue advantage." Allen, 976 S.W.2d at 667 (citing Harris, 839 S.W.2d at 69; State v. Baker, 751 S.W.2d 154, 164 (Tenn. Crim. App. 1987)).

Upon a review of the record in the instant case, we discern no abuse of discretion by the trial court in permitting Ms. Gibson to testify. First, although Ms. Gibson's name was not listed in the indictment as a witness, she was listed as a co-defendant; thus, the Defendant should have been aware of the possibility that she would be called as a witness. See State v. Hunt, 665 S.W.2d 751, 755 (Tenn. Crim. App. 1984) (reasoning that because the witness was indicted as a co-defendant, the defendant should have been aware of the possibility that she would be called as a witness); Taylor v. State, 477 S.W.2d 765, 766 (Tenn. Crim. App. 1971) (concluding that although the witness was

listed in the indictment as a co-defendant rather than a witness, he was not disqualified from testifying). Indeed, when defense counsel objected to her testimony at trial on the grounds that the Defendant lacked notice, the trial court responded, "She's a party defendant." Further, even assuming arguendo that the Defendant lacked notice, he has failed to show how he was prejudiced by the delayed disclosure. See Harris, 839 S.W.2d at 69. In this case, defense counsel failed to ask for a continuance or request additional time to prepare for cross-examination of Ms. Gibson. Further, her testimony, including both direct and cross-examination, covers only four pages in the trial transcript and reveals little more than that the Defendant lived with Ms. Gibson and asked her to deliver drugs to Barch on one occasion. The Defendant has failed to put forth any proof of prejudice resulting from the late notice. Accordingly, he is not entitled to relief.

## **CONLUSION**

Based on the foregoing authorities and analysis, we affirm the judgments of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE