# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 19, 2013 Session

## STATE OF TENNESSEE v. RICHARD CLEOPHUS SMITH

### Appeal from the Circuit Court for Knox County
### No. 92344     Mary Beth Leibowitz, Judge

_____

### No.  E2013-00215-CCA-R3-CD - Filed August 27, 2014

_____

Appellant, Richard Cleophus Smith, was indicted by presentment by the Knox County Grand Jury for felony murder, first degree murder, attempted first degree murder, employing a firearm during the commission of a dangerous felony, evading arrest by motor vehicle, evading arrest, aggravated assault, reckless endangerment, leaving the scene of an accident involving injury, driving while privilege suspended, and failure to provide proof of financial responsibility.  At the conclusion of a jury trial, the jury found Appellant guilty of all charges except aggravated assault for which he was found guilty of the lesser included offense of reckless endangerment.  The trial court sentenced Appellant to an effective sentence of life plus twenty-six years.  On appeal, Appellant argues that: (1) the evidence was insufficient; (2) that the trial court constructively amended the presentment charging driving while license suspended, after jeopardy attached by instructing the jury on the offense of driving without a license in possession; (3) that the trial court erred in denying Appellant's request for a special jury instruction; (4) that the trial court erred in allowing the testimony of two officers; (5) the trial court erred in denying his request for notes and memoranda generated by State witnesses when generating their reports; and (5) the trial court erred in imposing consecutive sentences.  We have thoroughly reviewed the record on appeal.  We affirm all judgments except the judgment for driving without a license in possession which must be dismissed because the trial court constructively amended the presentment by giving the contested jury instruction.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed in Part, Reversed and Dismissed in Part.

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and D. KELLY THOMAS, JR., JJ., joined.

Robert L. Jolley, Jr., and Jennifer L. Gower, Knoxville, Tennessee for appellant, Richard

Cleophus Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Kevin Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
*FACTUAL BACKGROUND*

Early in the day of July 3, 2009, Desmond Cowan witnessed an argument between his brother, Michael Cowan, and Ron C., who was Appellant's cousin. Ron C. owned a maroon Cadillac at the time. Later that morning, someone shot at Michael Cowan in the Walter P. Taylor Homes housing project in Knoxville, Tennessee. Desmond Cowan retrieved his gun from his aunt's house after he heard that someone had shot at his brother. When he returned to the Walter P. Taylor Homes in the late afternoon, he went to the neighborhood market. As he left the market, someone began to shoot at him from a vehicle, so he shot back. He did not recognize the vehicle and could not identify the driver.

On the same day, Margaret Cowan heard that there had been a shooting involving her sons and became concerned. She began looking for them. As she walked in the neighborhood in the late afternoon she noticed a maroon Cadillac driving slowly. The driver of the vehicle sat up and began shooting from the car. The individuals outside began running. Ms. Cowan ran inside the neighborhood market.

James Johnson and his friend, Ronald Gilmore, were walking to the neighborhood market at the same time. Mr. Johnson also saw the maroon Cadillac and realized gunshots were coming from inside the car. He and Mr. Gilmore headed towards the market. Mr. Gilmore was shot before he could reach the market and later died from his injuries.

At 5:15 p.m., Officer Joseph Huckleby with the Knoxville Police Department received a dispatch call for a shooting at the neighborhood market in the Walter P. Taylor Homes. When he arrived at the scene, people in the crowd pointed toward a maroon Cadillac yelling, "There he is." Officer Huckleby activated his emergency lights and began to pursue the Cadillac. The Cadillac sped up and led Officer Huckleby on a high-speed chase. Shortly thereafter, the Cadillac struck a gold Lincoln Continental. The accident disabled both vehicles. Officer Huckleby exited his vehicle with his gun drawn, and Appellant exited his vehicle and ran toward some nearby woods. Officer Huckleby did not follow Appellant into the woods because he did not have his radio. When Officer Huckleby returned to Appellant's vehicle, he saw two handguns lying on the floorboard.

Officers Timothy Thornton and Preston Willock responded to a call for assistance from Officer Huckleby. They arrived at the scene of the crash and went to the woods to look for Appellant. A resident of the area told the officers that he had seen an African-American male run behind his house. The officers went behind the house and saw Appellant running away from them. They ordered him to stop, and he got down on the ground and put his hands behind his back. He asked why he was going to jail. They responded "You know," and he responded, "They shot first." The officers arrested him.

The Knox County Grand Jury indicted Appellant for felony murder, first degree murder, attempted first degree murder, employing a firearm during the commission of a dangerous felony, evading arrest by motor vehicle, evading arrest, aggravated assault, reckless endangerment, leaving the scene of an accident involving injury, driving while privilege suspended, and failure to provide proof of financial responsibility. Appellant's jury trial began on May 9, 2012. The trial court amended Appellant's charge for driving while privilege suspended to driving without license in possession after the discovery that Appellant's license was not suspended. At the close of the State's proof, the trial court dismissed the charge for failure to provide proof of financial responsibility. At the conclusion of the jury trial, the jury found Appellant guilty of all charges except aggravated assault for which he was found guilty of the lesser included offense of reckless endangerment.

The trial court conducted a sentencing hearing. At the conclusion of the hearing, the trial court sentenced Appellant to a mandatory life sentence for felony murder, a twenty-year sentence for attempted first degree murder, and six years for employing a firearm during the commission of a dangerous felony. The trial court ordered the twenty-year sentence to be served consecutively to the six-year sentence and further ordered the life sentence to be served consecutively to the two other sentences. Appellant's effective sentence is life plus twenty-six years.

*ANALYSIS*
*I. Sufficiency of the Evidence*

Appellant's first issue on appeal is that the evidence was insufficient to support his convictions. The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994) (citing *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992)). Thus,

although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

*A. Death of Mr. Gilmore*

Appellant argues that the evidence was insufficient to support his convictions of first degree murder and felony murder because the State presented no evidence connecting Appellant to the death of Mr. Gilmore. He argues that a bullet was not recovered from Mr. Gilmore's body to connect Appellant to his death and that the medical examiner could not determine the caliber of the bullet that killed Mr. Gilmore. In addition, Appellant summarily argues that "[b]ased on the description of the location of the shell casings" close to Mr. Gilmore's body "there is no evidence to prove beyond a reasonable doubt that [Appellant] fired the shot that killed Mr. Gilmore."

When the evidence is taken in a light most favorable to the State, the evidence showed that early on the day in question, Michael Cowan and Ron C. engaged in an argument. Appellant is Ron C.'s cousin. That afternoon, witnesses saw a man driving a maroon Cadillac identified as belonging to Ron C. in the Walter P. Taylor homes. Desmond Cowan, Michael Cowan's brother, was leaving the neighborhood market when someone began shooting at him from a car. Other witnesses identified the car as a maroon Cadillac and stated that the driver was not Ron C. As James Johnson and his friend, Ronald Gilmore, were walking toward the neighborhood market they saw and heard gunfire coming from a maroon Cadillac. The two men ran towards the market, but Mr. Gilmore did not make it to

-4-

the market and was fatally wounded. When Officer Huckleby arrived, witnesses identified a maroon Cadillac as the car from which the shots came. The Cadillac came into view, and Office Huckleby proceeded to pursue the Cadillac, which fled from him. The maroon Cadillac hit a vehicle, and the driver of the Cadillac ran into the nearby woods. Other officers began to pursue the driver. Eventually, they saw the driver and ordered him to the ground. Appellant was the driver that they apprehended.

Appellant argues that there was no evidence to support his conviction. However, his argument appears to focus solely on direct evidence. As stated above, circumstantial evidence can support a conviction, and this court may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Whether Appellant caused the death of Mr. Gilmore is a factual question to be resolved by the trier of fact. *Dorantes*, 331 S.W.3d at 379; *Pruett*, 788 S.W.2d at 561. We conclude that the evidence was sufficient to support Appellant's conviction for felony murder and first degree murder.

*B. Intent to Kill Desmond Cowan*

Appellant also argues that the State did not prove that Appellant intended to kill Desmond Cowan with premeditation, and therefore his convictions for felony murder, first degree murder, and attempted first degree murder must be reversed.

First degree murder is described as "[a] premeditated and intentional killing of another; . . . ." T.C.A. § 39-13-202(a). A defendant may be guilty of premeditated first degree murder even though the victim was an unintended victim, so long as the State proves the elements of intent, premeditation, and deliberation for the killing of an intended victim. *See State v. Ely*, 48 S.W.3d 710, 723-24 (Tenn. 2001); *Millen v. State*, 988 S.W.2d 164, 168 (Tenn. 1999). Tennessee Code Annotated section 39-13-202(d) provides that:

> "[P]remeditation" is an act done after the exercise of reflection and judgment.
> "Premeditation" means that the intent to kill must have been formed prior to
> the act itself. It is not necessary that the purpose to kill pre-exist in the mind
> of the accused for any definite period of time. The mental state of the accused
> at the time the accused allegedly decided to kill must be carefully considered
> in order to determine whether the accused was sufficiently free from
> excitement and passion as to be capable of premeditation.

An intentional act requires that the person have the desire to engage in the conduct or cause the result. T.C.A. § 39-11-106(a)(18). Whether the evidence was sufficient depends entirely on whether the State was able to establish beyond a reasonable doubt the element of

premetitation. *See State v. Sims*, 45 S.W.3d 1, 7 (Tenn. 2001); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). Whether premeditation is present is a question of fact for the jury, and it may be inferred from the circumstances surrounding the killing. *State v. Young*, 196 S.W.3d 85, 108 (Tenn. 2006); *see also State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000); *State v. Pike*, 978 S.W.2d 904, 914 (Tenn. 1998).

Premeditation may be proved by circumstantial evidence. *See, e.g., State v. Brown*, 836 S.W.2d 530, 541-42 (Tenn. 1992). Our supreme court has identified a number of circumstances from which the jury may infer premeditation: (1) the use of a deadly weapon upon an unarmed victim; (2) the particular cruelty of the killing; (3) the defendant's threats or declarations of intent to kill; (4) the defendant's procurement of a weapon; (5) any preparations to conceal the crime undertaken before the crime is committed; (6) destruction or secretion of evidence of the killing; and (7) a defendant's calmness immediately after the killing. *See State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997); *Pike*, 978 S.W.2d at 914-15. This list, however, is not exhaustive and serves only to demonstrate that premeditation may be established by any evidence from which the jury may infer that the killing was done "after the exercise of reflection and judgment." T.C.A. § 39-13-202(d); *see Pike*, 978 S.W.2d at 914-15; *Bland*, 958 S.W.2d at 660.

One learned treatise states that premeditation may be inferred from events that occur before and at the time of the killing:

> Three categories of evidence are important for [the] purpose [of inferring premeditation]: (1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, planning activity; (2) facts about the defendant's prior relationship and conduct with the victim from which motive may be inferred; and (3) facts about the nature of the killing from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design.

2 Wayne R. LaFave, Substantive Criminal Law § 14.7(a) (2d ed. 2003).

As stated above, the presence of premeditation is a question of fact for the jury and may be proven by circumstantial evidence.

We conclude that the evidence presented was sufficient to support the jury's findings that premeditation existed. The evidence presented at trial showed that Appellant's cousin and Desmond Cowan's brother engaged in an altercation. Desmond Cowan heard that someone was shooting at his brother during the day in question. This information caused

Desmond Cowan to get his gun to carry with him. Later that afternoon, Desmond Cowan was leaving the neighborhood market when a man in a maroon Cadillac, without apparent provocation, began shooting at him. Desmond Cowan shot back. Mrs. Cowan also testified that the man in the maroon Cadillac began to shoot first. Mr. Johnson also testified that the gunshots were coming from inside the maroon Cadillac. Other witnesses also testified to shots coming from the vehicle. After the shooting that resulted in the death of Mr. Gilmore, Appellant fled with Officer Huckleby in pursuit. When Appellant was involved in a car accident, he jumped out of the Cadillac and ran to the woods. From this evidence, we conclude that a reasonable jury could find premeditation.

## C. Self-Defense

Appellant argues that evidence showed that he acted in self-defense. Tennessee defines self-defense as follows:

> (b)(1) Notwithstanding § 39-17-1322, a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force.
>
> (2) Notwithstanding § 39-17-1322, a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:
>
> (A) The person has a reasonable belief that there is an imminent danger of death or serious bodily injury;
>
> (B) The danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and
>
> (C) The belief of danger is founded upon reasonable grounds.

T.C.A. § 39-11-611(b).

When a defendant relies upon a theory of self-defense, the State bears the burden of proving that the defendant did not act in self-defense. *State v. Sims*, 45 S.W.3d 1, 10 (Tenn. 2001). Further, it is well-settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact. *See State v. Goode*, 956 S.W.2d

521, 527 (Tenn. Crim. App. 1997); *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). "Encompassed within that determination is whether the defendant's belief in imminent danger was reasonable, whether the force used was reasonable, and whether the defendant was without fault." *State v. Thomas Eugene Lester*, No. 03C01-9702-CR-00069, 1998 WL 334394, at *2 (Tenn. Crim. App., at Knoxville, June 25, 1998), *perm. app. denied*, (Tenn. Feb. 1, 1999) (citing *State v. Renner*, 912 S.W.2d 701, 704 (Tenn. 1995)). It is within the prerogative of the jury to reject a claim of self-defense. *See Goode*, 956 S.W.2d at 527. Upon our review of a jury's rejection of a claim of self-defense, "in order to prevail, the [Appellant] must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." *State v. Clifton*, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994).

At the conclusion of the trial, the trial court instructed the jury regarding self-defense. Clearly, the jury rejected Appellant's claim of self-defense. In order to prove that Appellant acted in self-defense, he would have had to have proven that he was not the initial shooter. More than one witness stated that the shots resulting in the death and injury to the victims began with the Cadillac driver's shooting. Other witnesses could not determine if the shots began with the driver of the Cadillac or another person on the street. The jury, which is the sole trier of fact, obviously determined that Appellant was not shooting in response to another shooter so as to protect himself. As stated above, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *Pruett*, 788 S.W.2d at 561.

In a footnote in this section of his brief, Appellant states that he requested an alteration to the self-defense pattern instruction. The trial court made an alteration, although not exactly as Appellant requested. The footnote consists of the following:

> Defense counsel asked the court to exclude the following language from the self-defense pattern instruction: "[t]his defense is not available to a defendant if the victim was an innocent third person who was recklessly injured or recklessly killed by the defendant's use of force." [ ] The trial court decided to strike the words "recklessly injured or" to make it "clear whom we are talking about." [ ] The modified instruction included the following language: This defense is not available to the defendant if the victim was an innocent third person who was recklessly killed by the defendant's use of force. [ ] [Appellant] maintains that the self-defense jury instruction was misleading because it did not specify to which Counts the defense was applicable.

(references to trial record omitted).

Although Appellant included a similar issue in his motion for new trial, we do not consider this an issue presented on appeal because Appellant has placed it in a footnote, has used conclusory language, and has not presented an argument or authority. If Appellant intended this statement to constitute an issue on appeal, it is waived for failure to include an argument or citation to authority. Tennessee Rule of Appellate Procedure 27(a)(7) provides that a brief shall contain "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Sanders*, 842 S.W.2d 257 (Tenn. Crim. App. 1992) (determining that issue was waived where defendant cited no authority to support his complaint).

Therefore, this issue is without merit.

*II. Constructive Amendment*

Appellant argues that the trial court constructively amended Count Ten of the presentment, driving while license suspended, after jeopardy attached by instructing the jury on the offense of driving without a license in possession. The State agrees that the trial court erred and concedes the error.

In the case at hand, at the close of the State's proof Appellant moved for a judgment of acquittal for all but one count. In response to Appellant's motion, the State admitted that it could not prove Appellant's guilt to Count Ten as charged. The State suggested that the trial court instruct the jury as to the "lesser included [offense] of driving without a license" in possession. Appellant submitted that the offense was not a lesser included offense of that charged. The trial court determined that it was and decided to instruct the jury as to driving without a license in possession.

In his brief, Appellant urges this court to employ the double jeopardy analysis contained in *State v. Watkins*, 362 S.W.3d 530 (Tenn. 2012), to determine "whether the amended charge in Count Ten was a lesser included offense of the original charge." The *Watkins* opinion provides guidance by which trial courts can, prior to trial, consider lesser-included offenses and determine whether dual convictions based on a single instance of criminal conduct are permitted without offending the principles of double jeopardy. Generally,

[i]f the elements of the offenses are the same, or one offense is a lesser included of the other, then we will presume that multiple convictions are not intended by the General Assembly and that multiple convictions violate double jeopardy. However, if each offense includes an element that the other does not, the statutes do not define the "same offense" for double jeopardy purposes, and we will presume that the Legislature intended to permit multiple punishments.

*Id.* at 557 (footnote omitted).

An accused in a criminal case has the right to be tried only upon a presentment or indictment returned by a grand jury. Tenn. Const. art. I, § 14. It is a constitutional requirement that a criminal defendant receive fair and reasonable notice prior to trial of the offense for which he is charged. U.S. Const. amend. VI; Tenn. Const. art. 1, § 9; *Hagner v. United States*, 285 U.S. 427, 431 (1932); *State v. Cleveland*, 959 S.W.2d 548, 552 (Tenn. 1997); *Warden v. State*, 381 S.W.2d 244, 245 (Tenn. 1964). Without a valid indictment there can be no valid prosecution, and a conviction upon an unindicted offense is a clear violation of due process of law under both the federal and state constitutions. *De Jonge v. Oregon*, 299 U.S. 353, 362 (1937); *State v. Trusty*, 919 S.W.2d 305, 309 (Tenn. 1996), *overruled on other grounds by State v. Dominy*, 6 S.W.3d 472, 476-77 (Tenn. 1999) (stating a conviction obtained in violation of the reasonable notice provisions required by article I, section 9 of the Tennessee Constitution violates due process under Tennessee Constitution article I, section 8); *State v. Morgan*, 598 S.W.2d 796, 797 (Tenn. Crim. App. 1979).

This Court has stated the following in regards to the constructive amendment of a charge:

[A] constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged . . . . In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment . . . . If, on the other hand, the variation between proof and indictment does not effectively modify an essential element of the offense charged, "the trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in trial that mar its perfection but do not prejudice the defendant."

*State v. Goodson*, 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001) (quoting *U.S. v. Adams*, 778 F.2d 117, 1123 (5th Cir. 1985)). "Not only must the government prove the crime it charges, it must charge the crime it proves," and "after an indictment has been returned, its charge

may not be broadened or changed except by action of the grand jury." *Id.* (citations omitted). A constructive amendment of the indictment, not consented to by the defendant, by definition results in a fatal variance because it does not accomplish the "overriding purpose of notice to the accused" required of an indictment. *See State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000).

Therefore, when determining whether driving without a license in possession is a lesser included offense of driving while license suspended we first look to the elements of each offense. Driving with a suspended license is defined as driving "a motor vehicle within the entire width between the boundary lines of every way publicly maintained that is open to the use of the public for purposes of vehicular travel . . . at a time when the person's privilege to do so is cancelled, suspended, or revoked. . . ." T.C.A. § 55-50-504. Suspension of a driver's license is defined as:

> [T]emporary withdrawal by formal action of the department of a person's driver license or privilege to operate a motor vehicle on the public highways, which temporary withdrawal shall be for a period specifically designated by the department, not to exceed six (6) months for any first offense, except as provided otherwise by law.

T.C.A. § 55-50-102(53). Driving without a license, on the other hand is codified in Tennessee Code Annotated section 55-50-351, which provides:

> Every licensee shall have such licensee's license in immediate possession at all times when operating a motor vehicle and shall display it upon demand of any officer or agent of the department or any police officer of the state, county or municipality . . . . [A]ny other law enforcement officer . . . has the right to demand the exhibition of the license of any operator of a motor-driven cycle as described in § 55-8-101, and effect the arrest of any person so found to be in violation of this section.

T.C.A. § 55-50-351(a). An examination of the elements of both offenses reveals that it is evident they are not the same, and one offense is not a lesser included offense of the other. Therefore, the trial court constructively amended the indictment by permitting the jury to "convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged." *State v. Goodson*, 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001). We agree with Appellant and the State that the presentment was constructively amended because of the instruction. Therefore, we conclude that Appellant's conviction for driving without a driver's license in his possession must be dismissed.

*III. Jury Instructions*

Appellant argues that the trial court erred when it denied Appellant's request for a special jury instruction. The presentment charging Appellant with evading arrest while operating a motor vehicle and evading arrest stated that Appellant "unlawfully" and "intentionally" fled from Officer Huckleby who "was attempting to make a lawful arrest of [Appellant] . . . ." At trial, Appellant requested an instruction that explained the "probable cause required to make an unlawful arrest." On appeal, Appellant argues that the denial of his request for the special instruction "denied [Appellant's] right to a correct and *complete* charge of the law."

A defendant has the constitutional right to complete and accurate jury instructions on the law, and the trial court's failure to provide complete and accurate jury instructions deprives a defendant of the constitutional right to a jury trial. *See State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). Erroneous jury instructions are subject to harmless error review. *State v. Belser*, 945 S.W.2d 776, 782 (Tenn. Crim. App. 1996). However, if the error is constitutional in nature, there must be a reversal unless the error is harmless beyond a reasonable doubt. *Id.*

Tennessee Code Annotated section 39-16-603(b)(2) states, "It is a defense to prosecution under this subsection (b) that the attempted arrest was unlawful." When presented as a statutory defense, the defense must be "fairly raised by the proof at trial, and submitted to the jury for determination." *State v. Darrin Bonner*, W2007-02409-CCA-R3-CD, 2009 WL 1905420, at *5 (Tenn. Crim. App., at Jackson, July 2, 2009).

In the case herein, Appellant did not contend that the arrest was unlawful. In order for the issue of an unlawful arrest to be presented to the jury the proof would have to be fairly raised by the proof at trial. There was no evidence presented by either side at trial that the arrest was unlawful. At trial, the proof showed that Officer Huckleby was directed by several bystanders to a maroon Cadillac, driven by Appellant, as the source of the shots. Witnesses specifically told him that they heard and saw shots coming from the Cadillac. When Officer Huckleby began to pursue the vehicle in question, Appellant led Officer Huckleby on a high-speed chase through the neighborhood. Appellant did not stop until he was involved in a traffic accident with another vehicle. At this point, Appellant got out of the Cadillac and ran into the nearby woods, eluding the officers who were in pursuit. We conclude that this is ample evidence to support a finding of probable cause for the lawful arrest of Appellant. Thus, no jury instruction on this defense was warranted.

Moreover, even though this statutory defense was not fairly raised by the proof at trial, we determine that the arrest was lawful. Both the Fourth Amendment to the United States

Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures by government agents. *See* U.S. Const. amend. IV; Tenn. Const. art. I, §7. '"These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'"' *State v. Moats*, 403 S.W.3d 170, 177 (Tenn. 2013) ((quoting *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002) (quoting *Camara v. Mun. Ct.*, 387 U.S. 523, 528, (1967))). The Tennessee Supreme Court has noted previously that "[a]rticle I, [section] 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment [of the United States Constitution]," and that federal cases applying the Fourth Amendment should be regarded as "particularly persuasive." *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968).

Under both constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003).

Our supreme court stated the following regarding probable cause for the seizure of an individual:

"Probable cause"–the higher standard necessary to make a full-scale arrest—means more than bare suspicion: "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). "This determination depends upon 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Goines v. State*, 572 S.W.2d 644, 647 (Tenn. 1978) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). "In dealing with probable cause, . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar*, 338 U.S. at 175, 69 S. Ct. 1302. *See also State v. Jefferson*, 529 S.W.2d 674, 689 (Tenn. 1975) (citing *Draper v. United States*, 358 U.S. 307, 313, 79 S. Ct. 329, 3 L. Ed.2d 327 (1959)),

*overruled on other grounds by State v. Mitchell*, 593 S.W.2d 280, 286 (Tenn. 1980).

*State v. Day*, 263 S.W.3d 891, 902 (Tenn. 2008). Again, there is absolutely no evidence to support Appellant's assertion that the arrest was unlawful, and ample evidence that the arrest was lawful. Therefore, the jury was not entitled to the charge defining probable cause. Even if failure to give the requested instruction could be said to be error any such error would be manifestly harmless beyond a reasonable doubt. Appellant is not entitled to relief on this issue.

## IV. Testimony of Officers Willock and Thornton

### A. Nondisclosure

Appellant argues that the trial court abused its discretion in allowing the testimony of Officers Willock and Thornton at trial. He bases his argument on the fact that the State did not include the officers' names in the presentment and that he did not receive notice of the State's intent to call them until the second day of trial.

Tennessee Code Annotated section 40-17-106 provides:

It is the duty of the district attorney general to endorse on each indictment or presentment, at the term at which the same is found, the names of such witnesses as the district attorney general intends shall be summoned in the cause, and sign such indictment or presentment name thereto.

T.C.A. § 40-17-106. However, it is well-established that the duty created by this statute is merely directory, not mandatory. *State v. Harris*, 839 S.W.2d 54, 69 (Tenn. 1992); *State v. Kendricks*, 947 S.W.2d 875, 947 (Tenn. Crim. App. 1996). The State's failure to include a witness's name on the indictment will not automatically disqualify the witness from testifying. *Harris*, 839 S.W.2d at 69; *Kendricks*, 947 S.W.2d at 947. Rather, a defendant will be entitled to relief for nondisclosure only if he or she can demonstrate prejudice, bad faith, or undue advantage. *Harris*, 839 S.W.2d at 69; *Kendricks*, 947 S.W.2d at 947. The determination of whether to allow the witness to testify is left to the sound discretion of the trial court. *Kendricks*, 947 S.W.2d at 947; *State v. Underwood*, 669 S.W.2d 700, 703 (Tenn. Crim. App. 1984).

In the case at hand, Appellant objected to the testimony and stated that he had not received formal notice that the officers were testifying. The State informed the trial court

that the case connection summary listed both officers as witnesses. Furthermore, the State informed the trial court that the State had provided Officer Willock's in-car camera and the reports in which Officers Thornton and Willock chased Appellant through the woods. In addition, both officers' names were on the bottom of the General Sessions warrants. The trial court determined that the officers had been connected to the case as potential witnesses for "a long time." The trial court allowed Appellant the opportunity to speak with the officers prior to their testimony at trial.

We conclude that Appellant has not demonstrated prejudice, bad faith, or undue advantage. *See Harris*, 839 S.W.2d at 69; *Kendricks*, 947 S.W.2d at 947. It is clear from the record that the officers in question were known to be an integral part of the case from the beginning. For this reason, we conclude that the trial court did not abuse its discretion.

### B. Prejudicial Statements

Appellant also argues that the trial court erred in allowing the officers' testimony that concerned Appellant's gang affiliation. Appellant argues that these statements were given without *Miranda* warnings.

The Tennessee Rules of Evidence embody, and our courts traditionally have acknowledged, "a policy of liberality in the admission of evidence in both civil and criminal cases . . . ." *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978); *see also State v. Robinson*, 930 S.W.2d 78, 84 (Tenn. Crim. App. 1995). To be admissible, evidence must satisfy the threshold determination of relevancy mandated by Rule 401 of the Tennessee Rules of Evidence. *See, e.g., Banks*, 564 S.W.2d at 949. Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Tenn. R. Evid. 403; *see also Banks*, 564 S.W.2d at 951.

Generally, the admission of evidence is a matter left to the discretion of the trial court, and the trial court's decision will not be disturbed on appeal absent an abuse of discretion. *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). "An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *State v. Dotson*, 254 S.W.3d 378, 392 (Tenn. 2008) (quoting *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)).

If the only purpose of evidence of gang membership is to establish that the defendant acted in conformity with his bad character or to demonstrate that he had a propensity to

commit a crime, that evidence is clearly inadmissible. *Bunch v. State*, 605 S.W.2d 227, 230 (Tenn. 1980); Tenn. R. Evid. 404.

In the case at hand, Officer Willock testified at trial that he and Officer Thornton were sitting in the patrol car. Officer Willock was filling out paperwork. Officer Thornton received a telephone call during which he was given information regarding firearms that had been discovered in Appellant's car. Officer Willock testified to the following scenario:

> I believe the defendant over-heard us talking about his firearms and asked, "Where are my babies." And we said, "I don't know what you're talking about." And he said, "My guns, my Mack 11's." We said, "Well, they're being confiscated." He said, "What are you doing with them?" We said, "Well, we didn't personally confiscate them; so other officers did at the scene." And he said, "Why did you do that? Why are they doing that? Why are they taking my guns." [We] said, "Well, we can't just leave them in your vehicle, you know; obviously, that's dangerous." And he said kind of under – just casually, "Well, I like to dress up my babies." And [Officer] Thornton said, "I don't understand; I don't know what that means." He said, "I like to put colors and stuff on my guns."

The State asked Officer Willock what that phrase meant to him, and he responded, "In my five years experience immediately I recognize that as putting gang colors/symbols on your guns." At this point, Appellant objected. The trial court overruled the objection, and Officer Willock proceeded to testify that red signified the "Bloods" and the east side of Knoxville. He also testified that the shooting occurred on the east side.

The State concedes that the testimony should have been excluded from trial because there was no evidence that suggested the crime was related to any gang activities. However, the State argues that the error was harmless. We agree with the State's concession and now turn to whether the erroneous introduction of this evidence requires a reversal.

We note that Tennessee Rule of Appellate Procedure 36(b) states that "[a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). Our supreme court has given further guidance in these matters by stating that "the line between harmless and prejudicial error is in direct proportion to the degree . . . by which the proof exceeds the standard required to convict." *Delk v. State*, 590 S.W.2d 435, 442 (Tenn. 1979); *see also, e.g., State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999).

-16-

In the case at hand, we conclude that the evidence was overwhelming so that the error was harmless. Witnesses to the shooting pointed to a maroon Cadillac and informed Officer Huckleby that the shots had come from the car. Officer Huckleby pursued Appellant who led officers on a high-speed chase. The driver of the maroon Cadillac exited the car and ran into the woods. Other officers located Appellant based upon information from a local resident. They apprehended the individual who was Appellant. We conclude that the introduction of the evidence in question, while an abuse of discretion, was harmless error.

*V. Ballistics and Crime Scene Evidence*

Appellant also argues that the trial court denied his Sixth Amendment "right to prepare and present a defense by refusing to grant him access to ballistics and crime scene reconstruction information" because he needed this information to support his self-defense claim.

Prior to trial, Appellant filed a motion requesting "access to notes, including bench notes and related evidence used by Patricia Resig, the firearms examiner who testified as an expert in the field of firearms identification, and conducted examinations on the weapons and shell casings seized in Mr. Smith's case" and "access to '[a]n itemization or inventory . . . including but not limited to notes and other documents' relating to the location of the shell casings when they were collected from the scene" and "all bench notes, notes, and other documents and information relating to the comparisons made of the 9 millimeter shell casings against the Cobray semi-automatic pistol." In other words, Appellant requested the notes and underlying documents created by the potential expert witnesses when generating their reports.

The trial court held a hearing prior to trial on the motion. After hearing argument from both counsel, the trial court stated the following:

> Well, the State is not required under the rule to turn over the rough notes of the officers, and that's what basically you are asking for is these – their notes as to their – how they put together their report.
> I will, however, require that the State's agents, that is, the officer, retain those rough notes pending – pending trial to make sure that if necessary and there should be cross-examination they – they will have to produce those. So I can't require that.
> . . . .
> And at this point deny the motion with respect to all of the notes.

With regard to this issue, this Court has stated the following:

Although "[p]rinciples of due process require that a defendant in a criminal trial have the right to present a defense and to offer testimony" favorable to his cause, *State v. Flood*, 219 S.W.3d 307, 316 (Tenn. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed.2d 297 (1973); *State v. Brown*, 29 S.W.3d 427, 431 (Tenn. 2000)), that right is not without limits, *see id.* (citing *Chambers*, 410 U.S. at 302, 93 S. Ct. 1038). Indeed, the Supreme Court has observed that "[i]n the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence." *Chambers*, 410 U.S. at 302, 93 S. Ct. 1038. "So long as the rules of procedure and evidence are not applied arbitrarily or disproportionately to defeat the purposes they are designed to serve, these rules do not violate a defendant's right to present a defense." *Flood*, 219 S.W.3d at 316 (citing *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed.2d 413 (1998); *Holmes v. South Carolina*, 547 U.S. 319, 126 S. Ct. 1727, 164 L. Ed.2d 503 (2006); *Chambers*, 410 U.S. at 302, 93 S. Ct. 1038). To determine whether a particular evidentiary ruling has violated a defendant's constitutional right to present a defense, a reviewing court must consider:

> (1) Whether the excluded evidence is critical to the defense;
> (2) Whether the evidence bears sufficient indicia of reliability; and
> (3) Whether the interest supporting exclusion of the evidence is substantially important.

*Flood*, 219 S.W.3d at 316 (citing *Brown*, 29 S.W.3d at 434-35; *State v. Rice*, 184 S.W.3d 646, 673 (2006); *State v. Rogers*, 188 S.W.3d 593, 614 (Tenn. 2006)).

*State v. Ackerman*, 397 S.W.3d 617, 633 (Tenn. Crim. App. 2012).

As the trial court stated, Rule 16(a)(2) of the Tennessee Rules of Criminal Procedure states:

> *Information Not Subject to Disclosure.* Except as provided in paragraphs (A), (B), (E), and (G) of subdivision (a)(1), this rule does not authorize the discovery or inspection of *reports, memoranda, or other internal state documents* made by the district attorney general or other state agents or law enforcement officers in connection with investigating or prosecuting the case. Nor does this rule authorize discovery of statements made by state witnesses or prospective state witnesses.

(emphasis added).

We conclude that Rule 16 of the rules of criminal procedure was not "applied arbitrarily or disproportionately to defeat the purposes they are designed to serve." Therefore, the trial court's decision did not violate a defendant's right to present a defense.

*VI. Consecutive Sentences*

Appellate review of sentencing decisions is now based on an abuse of discretion standard. This Court must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706 n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, a sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute.

Under Tennessee Code Annotated section 40-35-115(a), if a defendant is convicted of more than one offense, the trial court shall order the sentences to run either consecutively or concurrently. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that, "(2) The defendant is an offender whose record of criminal activity

is extensive; . . . (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; . . . (6) The defendant is sentenced for an offense committed while on probation . . . ." T.C.A. § 40-35-115(b)(2), (4), (6). When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). Our supreme court recently held that the standard of appellate review for consecutive sentencing is abuse of discretion accompanied by a presumption of reasonableness. *State v. James Allen Pollard*, No. M2011-00332-SCR11-CD, ___ S.W.3d ___, 2013 WL 6732667, at *9 (Tenn. Dec. 20, 2013).

Before ordering the defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes, necessary to protect the public against further criminal conduct, and in accord with the general sentencing principles. *See Imfeld*, 70 S.W.3d at 708-09; *State v. Wilkerson*, 905 S.W.2d 933, 938-39 (Tenn. 1995).

The trial court made the following findings:

It is clear to the Court that based upon [Appellant's] considerable criminal history, adult and juvenile, his actions on this particular occasion, his high speed driving, his going to a second place to fire guns, that he is a dangerous offender. His behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. It does not matter to me. It will never matter to me what neighborhood we're firing guns in. It is just as important to me that children and innocent adults are not harmed in Walter P. Taylor Homes as it is if they are not harmed in Farragut. I don't care. This was an incidence where — where there was tremendous lack of care about the people around, about the people who, as you say, if it had been you, if it had been your family on that side and another family on this side. So I'm going to stack the 20 years on count 1, count 2 having merged into count 1, and — and the six years on top of that by law. The rest of it is concurrent. So [Appellant] will have a life sentence, plus 26 — 27 years — 26 years.

Furthermore, at the hearing on the motion for new trial, the trial court stated the following:

[I]t was the opinion of the Court at that time that [Appellant] is a dangerous offender whose behavior indicates little or [no] regard to human life or no

-20-

hesitation when human life risk is high. There are hundreds of people who live in Walter P. Taylor Homes. They have right to be safe. Many were out at that time.

In the case at hand, the trial court found that Appellant was a dangerous offender. The Court concludes that the trial court was correct in determining that this factor applies and the aggregate sentence is necessary to avoid depreciating the seriousness of this offense and is necessary to protect the public from further serious criminal conduct by this defendant. The Court finds that consecutive sentencing is reasonably related to the severity of the offense based upon the fact that Appellant indiscriminately began shooting out of car at a time of day when many innocent people were out and about.

Therefore, the trial court did not abuse its discretion, and this issue is without merit.

*CONCLUSION*

Appellant's conviction for driving without a license in possession is reversed and dismissed. All other judgments of the trial court are affirmed.


_____
JERRY L. SMITH, JUDGE