

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 10, 2017

## STATE OF TENNESSEE v. TIMOTHY DUNN

**Appeal from the Circuit Court for Robertson County**
No. 74CC2-2014-CR-144      William R. Goodman, III, Judge

_____

**No. M2016-00469-CCA-R3-CD**

_____

A Robertson County jury convicted the Defendant, Timothy Dunn, of sale of cocaine within 1,000 feet of a school and delivery of cocaine within 1,000 feet of a school. The trial court merged the two convictions and sentenced the Defendant to serve seventeen years in the Tennessee Department of Correction. On appeal, the Defendant argues that: (1) the trial court erred when it denied his request for a continuance; (2) the trial court erred when it allowed Detective Eddie Stewart to testify when he was not listed on the indictment; (3) the evidence is insufficient to support his conviction; and (4) his sentence is excessive. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Leticia F. Alexander (on appeal), Nashville, Tennessee, and Collier W. Goodlett (at trial), Clarksville, Tennessee, for the appellant, Timothy Dunn.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
## I. Facts

This case arises out a controlled buy between the Defendant and a confidential informant ("CI") that occurred within a thousand feet of Bransford Elementary School. A Robertson County grand jury indicted the Defendant for sale of cocaine within 1,000

feet of a school and delivery of cocaine within 1,000 feet of a school. At trial, the parties presented the following evidence:

James M. Davis, the Director of Schools for the Robertson County Board of Education, testified that Bransford Elementary, located in Springfield, Tennessee, is a school that serves kindergarten and preschool students. He estimated that approximately two hundred students attend Bransford Elementary.

David Brewer, a City Engineer for the City of Springfield, testified that he created a map with a "thousand foot zone" around Bransford Elementary with the use of GPS equipment. Mr. Brewer confirmed that the intersection of Elmwood Drive and 15th Avenue is within a thousand feet of Bransford Elementary.

The CI testified that she first used cocaine when she was fifteen years old. She described her cocaine use as recreational until the age of twenty-six or twenty-seven. At that time, she was introduced to crack cocaine and developed a daily habitual use of the drug. The CI recalled that, in August 2013, she agreed to work with narcotic officers Detective Eddie Stewart and Detective Eric Elliott. The CI said that her role was to arrange to purchase one gram of crack cocaine from James Johnson, Jr., a co-defendant. The CI stated that she had known the Defendant for several years.

On August 21, 2013, the CI met with Detective Stewart and Detective Elliott, and they searched the CI and her vehicle. The CI contacted James Johnson, Jr. and arranged to buy one gram of crack cocaine for fifty dollars. The telephone conversation between the CI and Mr. Johnson was recorded, and the recording was played for the jury. In the recording, the CI asked Mr. Johnson how much for a "G." Mr. Johnson responded, "[F]ifty." He then told the CI where to meet him for the exchange. Following this phone conversation, the detectives provided the CI with three twenty dollar bills and a video surveillance device for her car. The CI then drove to 15th and Elmwood to buy one gram of crack cocaine.

The CI testified that she parked at "a project" located "at the bottom of 15th on the right hand side." Shortly thereafter, Mr. Johnson and the Defendant pulled in behind and to the left of the CI's vehicle in a light-colored van. The Defendant exited the van and handed the CI a "tied up baggie" containing a gram of crack cocaine. In return, the CI handed the Defendant the sixty dollars of "buy money" the detectives had provided. The Defendant then reached into the van and retrieved two five dollar bills in change and gave it to the CI. After receiving the change, the CI drove to a prearranged location to meet with the detectives. The CI turned over the crack cocaine, and the detectives retrieved the recording device from the CI's car, searched her person, and searched the car.

The video footage of the controlled buy was played for the jury. The video showed the CI driving to the agreed upon location, during which time she received a phone call from Mr. Johnson. She confirmed that she was on her way. Several minutes later, the Defendant's face appeared in the driver's side window, and he said the police were across the street. The CI handed him sixty dollars, telling him the amount. The Defendant disappeared and then reappeared and handed the CI two bills. A minute later, a phone conversation between Detective Stewart and the CI can be heard. During the conversation, the CI told Detective Stewart that there was "a problem." The CI testified at trial that she was referring to the fact that the Defendant delivered the drugs rather than Mr. Johnson, the "target" of the investigation.

The CI confirmed that she had "some citations" for misdemeanor theft committed at Walmart. She explained that often drug dealers would "trade things that they need for their products." The CI testified that she paid restitution to Walmart, and her charges were dropped. Since that time she had been charged with two counts of misdemeanor theft in Putnam County, Tennessee, and pled guilty to both counts. Additionally, the CI was convicted of DUI in 2006 and 2008 in Robertson County, Tennessee.

Eddie Stewart, a City of Springfield Police Department Narcotics Agent, testified that he conducted a controlled drug buy on August 21, 2013, with the use of the CI. His testimony was consistent with the CI's testimony about the events in preparation for the controlled buy. He testified that he was in an unmarked vehicle during the transaction and was positioned across a field from where the CI and the Defendant exchanged the drugs. He stated that the CI was in a "silverish gray" Ford Taurus and that he observed a "thin black male" standing at her car. He described the transaction as "pretty fast." Detective Stewart identified a still photograph extracted from the surveillance video taken during the transaction as the Defendant. He confirmed that the CI was paid eighty dollars for her work in this transaction.

Eric Elliott, a Robertson County Sheriff's Office narcotics detective, testified about the August 21, 2013 investigation involving Mr. Johnson. He explained that the plan was to purchase crack cocaine from Mr. Johnson. He explained that he monitored the audio portion of the transaction while Detective Stewart visually monitored the transaction. Following the controlled buy, Detective Elliott collected the substance he believed to be crack cocaine and put the substance in a safe once back at his office.

Denotria Patterson, a Tennessee Bureau of Investigation Special Agent Forensic Scientist, testified as an expert witness in the field of chemical analysis. Agent Patterson weighed the substance collected in this case, which was 0.76 grams. She conducted testing and confirmed that the substance was cocaine base or crack cocaine, a Schedule II

controlled substance. Agent Patterson's Official Forensic Chemistry Report was entered into evidence.

Based upon this evidence, the jury convicted the Defendant of sale of cocaine within 1,000 feet of a school and delivery of cocaine within 1,000 feet of a school. The trial court merged the two convictions and sentenced the Defendant to serve seventeen years in the Tennessee Department of Correction. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant argues that: (1) the trial court erred when it denied his request for a continuance; (2) the trial court erred when it allowed Detective Eddie Stewart to testify when he was not listed on the indictment; (3) the evidence is insufficient to support his conviction; and (4) his sentence is excessive.

### A. Motion for a Continuance

The Defendant asserts that the trial court erred when it denied his request for a continuance on the morning of trial to hire a new attorney. He asserts that this denial prevented him from participating in his defense and receiving a fair trial. The State responds that the Defendant has failed to show that the trial court abused its discretion by denying the "last-minute motion."

The decision of whether to grant a continuance is one within the sound discretion of the trial court, which will not be overturned absent a clear showing of abuse of discretion that resulted in prejudice to the defendant. *State v. Odom*, 137 S.W.3d 572, 589 (Tenn. 2004); *State v. Russell*, 10 S.W.3d 270, 275 (Tenn. Crim. App .1999). "An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied [a] defendant a fair trial or that it could be reasonably concluded that a different result would have . . . followed had the continuance been granted." *State v. Hines*, 919 S.W.2d 573, 579 (Tenn. 1995). "In order to establish an abuse of discretion, the complaining party must make a clear showing of prejudice as a result of the continuance being denied." *Russell*, 10 S.W.3d at 275 (citing *State v. Teel*, 793 S.W.2d 236, 245 (Tenn. 1990)).

The grand jury indicted the Defendant on February 19, 2014, and law enforcement officers arrested him on February 26, 2014. The trial court ordered appointment of counsel on February 28, 2014. More than a year later, on July 13, 2015, the morning of trial, the Defendant informed his appointed attorney that "he was in the process of paying [an attorney] to represent him on this case." The appointed attorney, in his oral motion to

- 4 -

the trial court, acknowledged that the first settlement date was in April 2014 and that the case had been repeatedly continued in the settlement process. The appointed attorney stated to the trial court that he was "prepared to go forward" but asked, on the Defendant's behalf, to reset the trial so that the Defendant could employ "counsel of his choice." The appointed attorney requested a sixty-day continuance or that the case be set for a status conference on July 31, 2015.

The State "adamantly oppose[d]" the request, arguing that an agreement was in place between the State and the Defendant on condition that the Defendant "remain in compliance with all laws of the State of Tennessee." In April 2015, the Defendant was arrested for aggravated assault and later pleaded guilty to domestic assault. At that time, the State announced in court that all "previous negotiations" were withdrawn and the matter was set for trial in July 2015. The State noted that, instead of pursuing hiring an attorney at that time, the Defendant admitted himself to Meharry for a "twenty-eight day program in attempt – in [the prosecutor's] belief, to delay this proceeding." Through appointed counsel, the Defendant was notified that the State was "going forward on the school zone." The State asserted that this request for a continuance was "just another delay tactic." In denying a continuance, the trial court stated, "this has been set for some time, we are going to have a trial today. It's going to be [the Defendant]'s decision whether the jury list is delivered to [appointed counsel] or [retained counsel]."

Appointed counsel notified the court that the Defendant had left court to try to retain another attorney. After a brief break, appointed counsel notified the court that the Defendant had spoken with two attorneys and neither was able to "assume the duties of a trial this morning." Appointed counsel renewed his request for a continuance. The trial court denied the renewed motion for continuance, noting both the indictment date and the fact that neither attorney identified by the Defendant as potential attorneys to represent him had appeared in court that morning.

We conclude that the Defendant has not proven that the trial court abused its discretion when it denied his motion for a continuance. The trial court appointed counsel in February 2014. Once negotiations between the State and the Defendant broke down in April 2015, the case was set for trial in July 2015. The Defendant had the opportunity to retain an attorney at any point and chose not to do so until the morning of trial. There is no evidence in the record that a different result would have been reached had either of the two attorneys he sought to employ the morning of trial, agreed to represent him. The Defendant is not entitled to relief on this issue.

**B. Detective Eddie Stewart's Testimony**

The Defendant argues that the trial court erred when it failed to exclude Detective Stewart's testimony because Detective Stewart was not listed on the indictment as required by Tennessee Code Annotated section 40-17-106. The State responds that the Defendant has waived our review of this issue because he withdrew his objection at trial.

Tennessee Code Annotated section 40-17-106 directs the State to list "the names of such witnesses as [it] intends shall be summoned in the cause" on the charging indictment. *See also* T.C.A. § 40-13-107; Tenn. R. Crim. P. 16, *Advisory Comm'n Cmts*. The purpose of this statute is to prevent surprise to the defendant at trial and to permit the defendant to prepare his or her defense to the State's proof. This duty is merely directory, not mandatory, however, and therefore the State's failure to include a witness's name on the indictment does not automatically disqualify the witness from testifying. *State v. Harris*, 839 S.W.2d 54, 69 (Tenn. 1992) ("Rule 16, Tenn. R. Crim. P., does not require nor authorize pretrial discovery of the names and addresses of the State's witnesses."). In cases of nondisclosure, a defendant must demonstrate prejudice, bad faith, or undue advantage to obtain relief. *Id*. The determination of whether to allow the witness to testify is left to the sound discretion of the trial judge, which is exercised upon examination of the circumstances presented in that particular case. *State v. Underwood*, 669 S.W.2d 700, 703 (Tenn. Crim. App. 1984) (citing *McBee v. State*, 372 S.W.2d 173 (Tenn. 1963)).

At trial, the Defendant objected to Detective Stewart's testimony on the basis that his name was not disclosed on the indictment or in the record. He asserted that Detective Stewart testifying was "totally a surprise." The State conceded that it had incorrectly understood that Officer Consiglio rather than Detective Stewart was involved in the controlled buy. The State apologized but asserted that appointed counsel had listened to the recording of the buy during which Detective Stewart identified himself by name. The State argued that, based upon this, the Defendant had notice and Detective Stewart could not be a "total surprise." The recording was played, following which, appointed counsel stated, "I stand corrected - - The officer clearly states his name. I apologize to both the Court and to the State."

The record reflects that the Defendant withdrew his objection at trial, thereby the Defendant "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a) (providing that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"); Tenn. R. Evid. 103(a)(1). Furthermore, the Defendant does not ask this Court to conduct a plain error review nor does he make any argument as to plain error review. It is the defendant's burden to persuade this Court that plain error exists and that the error "was of sufficient magnitude that it probably changed the

outcome of the trial." *State v. Hester*, 324 S.W.3d 788, 808 (Tenn. 2010). Thus, we conclude that the Defendant waived our review of this issue and has not demonstrated that review is necessary to do substantial justice.

## C. Sufficiency of the Evidence

The Defendant challenges the sufficiency of the evidence supporting his conviction. When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their

demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

In this case, the State was required to show that the Defendant knowingly sold more than .5 grams of cocaine within 1,000 feet of a school. T.C.A. §§ 39-17-417; 39-17-432(b)(1) (2014).

The evidence, considered in the light most favorable to the State, showed that the Defendant handed the CI .76 grams of crack cocaine through her driver's side window and, in exchange, the CI handed the Defendant $60. The Defendant took the $60, went back inside the van to retrieve change, and gave the CI two five dollar bills. These events occurred within a thousand feet of Bransford Elementary. This is sufficient evidence upon which a jury could find the Defendant guilty, beyond a reasonable doubt, of selling and also delivering to the CI .76 grams of a Schedule II drug for sixty dollars within a school zone.

In his brief on appeal, the Defendant asserts that the State was required to show that he personally profited from the sale. This, however, is not a statutory element of the charged offense. Accordingly, we conclude that there is sufficient evidence to support the Defendant's conviction. He is not entitled to relief as to this issue.

### D. Sentence

Finally, the Defendant asserts that the seventeen year sentence imposed is excessive. He argues that, because of his minimal criminal history and the minor role he played in the offense, the trial court erred by increasing his sentence two years beyond the minimum fifteen year sentence. The State responds that the Defendant has failed to show that the trial court abused its discretion. We agree with the State.

Appellate review of sentences is under the abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*.; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). In the context of sentencing, as long as the trial court places the sentence within the appropriate range and properly applies the purposes and principles of the Sentencing Act, this Court must presume the sentence to be reasonable. *Bise*, at 704-07. As the *Bise* Court stated, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 708. We are also to recognize that the defendant bears "the burden of showing that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2014); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

At the sentencing hearing, the trial court applied as a mitigating factor that the Defendant's eighty-six year old mother was an invalid and needed his assistance. T.C.A. § 40-35-113 (13). Next, the trial court applied enhancement factor (1), that the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. T.C.A. § 40-35-114 (1). The trial court also applied enhancement factor (13), that the Defendant was released on bail for three theft charges at the time he committed the instant offense. T.C.A. § 40-35-114 (13). The trial court concluded by ordering the Defendant to serve seventeen years in the Tennessee Department of Correction.

The Defendant was sentenced as a Range I, standard offender, for a Class A felony. As such, the applicable sentencing range was between fifteen and twenty-five years. The trial court properly considered both enhancement and mitigating factors. The presentence report shows that the Defendant has a history of misdemeanor offenses beginning in 2004: simple possession, failure to appear, three convictions for driving on a suspended license, driving on a revoked license, criminal simulation, domestic assault, reckless endangerment, and six convictions for theft. Additionally, the Defendant was released on bail at the time he committed the offense in this case.

The evidence supports the application of enhancement factor (1) and enhancement factor (13). T.C.A. 45-35-114 (1) (14). The trial court considered the relevant principles and sentenced the Defendant to a within range sentence; therefore, the trial court acted within its discretion in ordering a seventeen year sentence based upon the Defendant's prior criminal conduct and his release on bail at the time of the instant offense. Accordingly, we conclude that the Defendant is not entitled to relief as to this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE